## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NVR, INC. d/b/a RYAN HOMES, ) | |
| ) | |
| Plaintiff, ) | 2:19-cv-26-NR |
| ) | |
| v. ) | |
| ) | |
| MUTUAL BENEFIT INSURANCE ) | |
| COMPANY d/b/a MUTUAL ) | |
| BENEFIT GROUP, ) | |
| ) | |
| Defendant. ) | |

## OPINION ON MOTION TO DISMISS [ECF 56]

**J. Nicholas Ranjan, United States District Judge**

NVR builds and sells homes. When it does so, it does not prepare the land. It contracts with developers, who are responsible for getting the land ready for NVR. Under this arrangement, in 2004, land developers developed and sold NVR certain lots in western Pennsylvania. NVR then built homes on those lots and sold them to homebuyers. Then several landslides happened, causing massive damage to many of those homes. The homeowners filed lawsuits against NVR, the developers, and others, which are pending.

NVR filed this lawsuit, seeking insurance coverage to cover the defense of and any losses from the underlying homeowner lawsuits. The problem for NVR, though, is that the relevant policies were issued to an engineering firm, PS&R, which performed work for the developers. While NVR was added to those policies as an additional insured, coverage for additional insureds under the policies is limited. That is, the policies only provide coverage where the losses were due to the work that PS&R performed for NVR. Because all the underlying lawsuits allege that PS&R performed work for the developers, not

for NVR, the policies at issue in this case provide no coverage. Thus, the Court will grant the motion to dismiss, with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises out of a June 2018 landslide that damaged several single-family lots and homes in a development in North Strabane Township, Washington County, Pennsylvania. NVR alleges that Majestic Hills, LLC ("Majestic Hills") and related persons and entities including Joseph DeNardo ("DeNardo"), Shari DeNardo, and JND Properties LLC ("JND") (collectively "the Developers") developed the property for homebuilding, and in 2004, NVR contracted with Majestic Hills to purchase the lots under a Lot Purchase Agreement ("LPA"). [ECF 55, pp. 2-3, ¶¶ 7-8]. In developing the property, Majestic Hills engaged subcontractors, including engineering firm PS&R. [ECF 55, p. 3, ¶¶ 9-10]. PS&R provided geotechnical engineering, construction monitoring, and field reporting services for the Developers. [ECF 55, pp. 8-9, ¶ 39].

With knowledge of PS&R's prior work for the Developers, NVR engaged PS&R in 2006 and 2018. Under these agreements, PS&R agreed to perform certain "Professional Services" for NVR, to indemnify NVR, and to maintain certain levels of general liability insurance coverage. [ECF 55, pp. 3-4, ¶¶ 11-17]. A graphical representation of the relationship between the various entities is below:



## I. The policies at issue.

Under the 2006 and 2018 agreements between NVR and PS&R, PS&R obtained general liability insurance policies issued by Mutual Benefit. [ECF 55, pp. 5-6, ¶ 25]. Mutual Benefit issued two primary and two umbrella policies that covered the policy periods of November 22, 2017 to November 22, 2018, and November 22, 2018 to November 22, 2019, respectively. [ECF 55, pp. 5-6, ¶ 25; ECF 55-3, 55-4, 55-5, 55-6]. NVR is listed as an additional insured under all four policies. [ECF 55, p. 6, ¶ 26].

The two additional insured endorsements that potentially provide coverage for NVR here apply only "with respect to 'bodily injury' or 'property damage' caused, in whole or in part, by 'your work' [defined as work of named insured PS&R] at the location designated and described in the schedule of this endorsement for that additional insured and included in the 'products-completed operations hazard.'" *See*, *e.g.*, [ECF 55-3, pp. 136, 139]. These endorsements both identify "NVR INC" as the additional insured. They each contain a schedule, one of which describes the "Location And Description Of Completed Operations" as "ALL NVR LOCATIONS" and the other which describes the "Location And Description Of Completed Operations" as "ANY AND ALL WORK PERFORMED FOR NVR INC." [ECF 55-3, pp. 136, 139].

## II. The underlying claims.

After the landslide, NVR was sued by several homeowners in state court. NVR was also named in a counterclaim in a federal tort case brought by NVR against the Developers. The lawsuits allege that PS&R performed work negligently for the Developers.

NVR is seeking coverage from Mutual Benefit for all the following state and federal-court claims:

**A.      The Phillips actions.**

On October 26, 2018, the Phillipses (owners of Lot 36) commenced an action in Washington County (the "original Phillips action"). The Phillipses filed a second action in Washington County on January 22, 2019 (the "second Phillips action"). [ECF 55, p. 17, ¶¶ 100, 103].

The operative complaints in the original and second Phillips action are substantially similar; however, the Phillipses sued only NVR in their original action, whereas they sued NVR, PS&R, and several other defendants in the second action. The operative complaints in both actions allege that NVR provided a ten-year limited warranty, which provided that the Phillips home would be free from "major structural defects in the materials or workmanship of the original construction …." [ECF 55-9, p. 5, ¶ 6; ECF 55-15, p. 16, ¶¶ 76–77].

The Phillipses purchased their home in 2014. [ECF 55-9, p. 6, ¶ 14; ECF 55-15, p. 9, ¶ 40]. As alleged in both actions, in February 2015, Mr. Phillips informed NVR that a crack had appeared in his home and was told by NVR that it was merely cosmetic and not included in the warranty. [ECF 55-9, pp. 6-7, ¶ 18; ECF 55-15, p. 10, ¶ 41]. In August 2017, Mr. Phillips found another structural crack in his home "believed to be dated back to 2015." [ECF 55-9, p. 7, ¶ 19; ECF 55-15, p. 10, ¶ 43].

On June 18, 2018, landslides occurred across the street from the Phillips home. [ECF 55-9, p. 9, ¶ 29; ECF 55-15, p. 10, ¶ 46]. Despite the landslides, NVR claimed that the cracks in the Phillips home were merely cosmetic. [ECF 55-9, p. 9, ¶ 30; ECF 55-15, p. 11, ¶ 47]. Around this time, Mr. Phillips discovered a 2006 report by PS&R, prepared "at the request of Majestic Hills," that allegedly shows that NVR knew that problems existed in the soil

throughout the Majestic Hills development. [ECF 55-9, p. 9, ¶ 31; ECF 55-15, p. 12, ¶ 56 and Ex. F].

Another landslide occurred on October 4, 2018, causing the roadway leading to the Phillips home to be deemed unsafe for travel and forcing the Phillips to vacate their residence. [ECF 55-9, p. 10, ¶¶ 34-35; ECF 55-15, p. 11, ¶¶ 49, 52].

The operative complaint in the original Phillips action contains the following counts:

| Count No. | Against | For |
|---|---|---|
| 1 | NVR | Declaratory judgment that that the property has a structural defect as defined in the warranty, and that NVR must repair or replace the Phillips's foundation or pay for its replacement. [ECF 55-9, pp. 14-15, ¶¶ 58-68]. |
| 2 | NVR | Preliminary and permanent injunction compelling NVR to repair the Phillips's home or pay its full replacement value. [ECF 55-9, pp. 15-17, ¶¶ 69-77]. |

The operative complaint in the second Phillips action contains the following counts:

| Count No. | Against | For |
|---|---|---|
| 1 | NVR | Declaratory judgment requiring NVR to honor the warranty. [ECF 55-15, pp. 16-17, ¶¶ 73-79]. |
| 2 | NVR | Breach of warranty. [ECF 55-15, pp. 17-19, ¶¶ 79-91]. |
| 3 | NVR and other defs. (though not PS&R) | Breach of contract as third-party beneficiary regarding the LPA. [ECF 55-15, pp. 19-20, ¶¶ 92-100]. |
| 4 | NVR, PS&R, and other defs. | Negligence. [ECF 55-15, pp. 21-23, ¶¶ 101-116]. |

| 5 | NVR, PS&R, and other defs. | Violation of the Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). [ECF 55-15, pp. 23-25, ¶¶ 117-130]. |
|---|---|---|
| 6 | NVR, PS&R, and other defs. | Intentional misrepresentation. [ECF 55-15, pp. 25-26, ¶¶ 131-139]. |
| 7 | NVR, PS&R, and other defs. | Negligent misrepresentation (in the alternative). [ECF 55-15, pp. 27-28, ¶¶ 140-146]. |
| 8 | NVR, PS&R, and other defs. | Private nuisance. [ECF 55-15, pp. 28-29, ¶¶ 147-154]. |

### B.    The Grimes action.

On September 19, 2019, the Grimeses (owners of Lot 38) filed a complaint against NVR, PS&R, and several other defendants in Washington County. [ECF 55-7, p. 2, ¶ 1]. They allege that PS&R "provided geotechnical engineering and construction monitoring and field reporting services" for JND—specifically, that PS&R was an "agent, employee, and/or subcontractor of JND." [ECF 55-7, p. 10, ¶ 53].

The Grimes complaint contains allegations about the LPA and the development of Lots 37, 38, and 39 that are much like those set forth above. These include allegations that PS&R performed earthwork monitoring services at the development "for DeNardo and/or JND" and prepared reports stating that "the contractor had generally performed earthwork-related construction activities in general compliance with accepted construction practices." [ECF 55-7, p. 10, ¶¶ 51-52]. PS&R also reviewed published geotechnical maps and relevant and presented a Preliminary Review that it "submitted to JND" on April 12, 2005. [ECF 55-7, p. 10, ¶ 54].

The Grimes complaint alleges that "PS&R provided earthwork monitoring to JND" related to Alton Industries, Inc.'s ("Alton") construction of

a sidehill embankment behind Lots 37, 38, and 39. [ECF 55-7, p. 11, ¶ 58]. PS&R issued earthwork monitoring reports to JND stating that "Alton had performed the earthwork-related construction activities in general compliance with accepted construction practices." [ECF 55-7, p. 11, ¶ 62].

The complaint alleges that, in 2006, Majestic Hills conveyed Lots 37, 38, and 39 to NVR, which constructed residences on the lots. [ECF 55-7, p. 11, ¶ 64]. As for the connection between PS&R and NVR, the complaint simply states that NVR entered into a Professional Services Agreement with PS&R in 2006 that pertained to any work requested by NVR from PS&R. [ECF 55-7, p. 12, ¶¶ 67-68]. The Professional Services Agreement is attached to the complaint, but no specific work by PS&R under that agreement is alleged or described. [ECF 55-7, p.12, ¶¶ 67-68 and Ex. I].

The complaint further alleges that in February 2018 the Grimeses detected cracking in their house. [ECF 55-7, p. 16, ¶ 103]. A crack was also detected about 10-12 feet from the top of the hillside slope on Lot 37. [ECF 55-7, p. 16, ¶ 105]. By May 2018, this crack extended into Lot 38's backyard and progressed toward Lot 39. [ECF 55-7, p. 16, ¶ 106]. The June 2018 landslide forced the Grimeses to evacuate their residence. [ECF 55-7, p. 17, ¶ 107]. The homes on Lots 37, 38, and 39 were condemned and the Grimes house was demolished. [ECF 55-7, p. 17, ¶¶ 113, 115].

The Grimeses assert six causes of action against NVR and/or PS&R. They allege:

| Count No. | Against | For |
| --- | --- | --- |
| 1 | NVR, PS&R, and other defs. | Breach of contract as third-party beneficiaries of the LPA, any contracts entered into by NVR, PS&R and other defendants with Majestic Hills, and any other contracts entered into by defendants. The Grimeses |

| | | state that they do not possess the contracts on which they are suing PS&R. [ECF 55-7, pp. 18-20, ¶¶ 119-129] |
|---|---|---|
| 2 | NVR, PS&R, and other defs. | Breach of the implied warranty of habitability. [ECF 55-7, pp. 21-22, ¶¶ 130-135]. |
| 3 | NVR, PS&R, and other defs. | Negligence. With respect to PS&R, the Grimeses allege that PS&R provided faulty certifications of earthwork-related activities. [ECF 55-7, pp. 22-24, ¶¶ 136-148]. |
| 4 | PS&R and one other def. | Professionally negligence, specifically that PS&R failed to exercise the ordinary care of engineers in providing its professional services. [ECF 55-7, pp. 24-25, ¶¶149-154]. |
| 5 | NVR, PS&R, and other defs. | Strict liability for abnormally dangerous activities. [ECF 55-7, pp. 25-26, ¶¶ 155-58]. |
| 6 | NVR and other defs. (though not PS&R) | Fraudulent and intentional misrepresentations over the quality of the development. [ECF 55-7, pp. 26-27, ¶¶ 159-62]. |

### C. The Hecht action.

On September 20, 2019, Jeanne Hecht (owner of Lot 39) filed a complaint in Washington County. [ECF 55, p. 18, ¶ 108]. She sued NVR along with other defendants, yet PS&R was not named as a defendant.

The Hecht complaint contains many of the same allegations as the Grimes complaint. Ms. Hecht alleges that she bought Lot 39 in November 2015. [ECF 55-11, p. 15, ¶ 58]. The complaint incorporates the same allegations of cracks in the Grimes residence before the landslide, though it does not allege any damage to Lot 39 before the landslide. [ECF 55-11, p. 15, ¶¶ 59-62]. The complaint alleges that PS&R was retained by JND to provide services for the development, [ECF 55-11, p. 12, ¶ 33], but it lacks specific allegations about any tasks performed by PS&R.

The Hecht complaint asserts that a landslide occurred on Lots 37, 38 and 39 in June 2018, forcing Ms. Hecht to evacuate her residence. [ECF 55-11, p. 15, ¶¶ 63-66]. The homes on these lots were condemned and Ms. Hecht's residence was demolished. [ECF 55-11, p. 16, ¶¶ 68, 70].

Ms. Hecht asserts the following causes of action against NVR and other defendants (but not PS&R):

| Count No. | Against | For |
|---|---|---|
| 1 | NVR and other defs. (though not PS&R) | Breach of contract as third-party beneficiary of the LPA, any contracts entered into by NVR and other defendants with Majestic Hills, and any other contracts entered into by defendants. [ECF 55-11, pp. 17-19, ¶¶ 73-83]. |
| 2 | NVR and other defs. (though not PS&R) | Breach of implied warranty of habitability. [ECF 55-11, pp. 19-20, ¶¶ 84-89]. |
| 3 | NVR and other defs. (though not PS&R) | Negligence. [ECF 55-11, pp. 20-21, ¶¶ 90-97]. |
| 4 | NVR and other defs. (though not PS&R) | Strict liability for abnormally dangerous activities. [ECF 55-11, pp. 21-22, ¶¶ 98-101]. |
| 5 | NVR and other defs. (though not PS&R) | Fraudulent/intentional misrepresentation. [ECF 55-11, pp. 22-23, ¶¶ 102-105]. |
| 6 | NVR | Breach of express warranty. [ECF 55-11, pp. 23-24, ¶¶ 106-115]. |
| 7 | NVR and other defs. (though not PS&R) | Violation of the UTPCPL. [ECF 55-11, pp. 24-25, ¶¶ 116-120]. |

### D.    The Swarek action.

On September 20, 2019, the Swareks (owners of Lot 37) filed a complaint in Washington County.  [ECF 55, pp. 18-19, ¶ 111].  The Swarek complaint alleges that in 2004, NVR entered into the LPA with Majestic Hills.  [ECF 55-12, p. 6, ¶ 21].  Majestic Hills, in turn, engaged engineering subcontractors, including PS&R, and these engineering subcontractor reports were provided to the Developers.  [ECF 55-12, pp. 9-10, ¶¶ 36, 41-42].  The complaint alleges that PS&R "was an agent, employee, and/or subcontractor" of JND when it provided services on the development.  [ECF 55-12, p. 10, ¶ 43].

While the Swarek complaint alleges that NVR entered into a Professional Services Agreement with PS&R that pertained to any work requested by NVR from PS&R, [ECF 55-12, p. 12, ¶ 57], it does not allege that NVR ever requested that PS&R perform any work in relation to the development.  The Professional Services Agreement is attached to the complaint, but no specific work by PS&R under that agreement is described. [ECF 55-12, p. 12, ¶ 58 and Ex. C].

According to the complaint, the Swareks bought Lot 37 in 2012.  [ECF 55-12, p. 14, ¶ 79].  Before the 2018 landslide, they noticed cracking in their house and dips in their yard.  [ECF 55-12, p. 14, ¶ 81].  The Swareks allege that NVR and DeNardo and/or JND were aware of these problems, and that each party often advised the Swareks that the other entity would resolve the problems.  [ECF 55-12, p. 14, ¶ 82].  The Swareks also allege that a crack was present along the hillside slope about 10-12 feet from the top of the slope on Lot 37, which extended across Lot 38 onto Lot 39.  [ECF 55-12, p. 14, ¶ 83].

The Swarek complaint alleges that in June 2018, a landslide occurred next to Lots 37, 38, and 39, causing the backyards of these Lots to slide onto an adjacent road.  [ECF 55-12, p. 15, ¶ 86].  The Swareks immediately vacated

their residence. [ECF 55-12, p. 15, ¶ 88]. The houses on these Lots were condemned, and two of the houses (including the Swareks's house) were demolished. [ECF 55-12, p. 15, ¶¶ 90, 92].

The Swareks assert six causes of action against NVR, PS&R, and other defendants. They allege:

| Count No. | Against | For |
|---|---|---|
| 1 | NVR, PS&R, and other defs. | Breach of contract as third-party beneficiaries of the LPA, any contracts entered into by NVR, any contracts that PS&R and other defendants entered into with Majestic Hills, and any other contracts entered into between the defendants. The Swareks state that they do not possess the contracts on which they are suing PS&R. [ECF 55-12, pp. 16-18, ¶¶ 95-105]. |
| 2 | NVR, PS&R, and other defs | Breach of the implied warranty of habitability. [ECF 55-12, pp. 18-19, ¶¶ 106-11]. |
| 3 | NVR, PS&R, and other defs | Negligence. As for PS&R, specifically, they allege that PS&R failed to provide accurate engineering reports and advice and provided faulty certifications of earthwork-related activities. [ECF 55-12, pp. 19-21, ¶¶ 112-122]. |
| 4 | PS&R | Professional negligence. This count alleges that PS&R failed to exercise ordinary care in providing professional services. [ECF 55-12, pp. 21-22, ¶¶ 123-28]. |
| 5 | NVR | Breach of express warranty. [ECF 55-12, pp. 22-23, ¶¶ 129-37]. |
| 6 | NVR and other defs. (though not PS&R) | Misrepresentations or omissions about the Majestic Hills development that they knew to be false. [ECF 55-12, pp. 23-24, ¶¶ 138-42]. |

### E.    The Sanders/Bhatt action.

On September 20, 2019, the Sanderses (owners of Lot 103) and the Bhatts (owners of Lot 102) filed a complaint in Washington County against

NVR, PS&R, and other defendants. [ECF 55, p. 19, ¶ 114]. It alleges that PS&R provided geotechnical engineering and construction monitoring and testing and that "PS&R is a licensed professional." [ECF 55-13, p. 5, ¶ 11]. It further notes that "NVR is asserting a professional liability claim against this defendant." [ECF 55-13, p. 5, ¶ 11].

The complaint begins with allegations about the LPA that are like those in the complaints summarized above. [ECF 55-13, pp. 6-9, ¶¶ 15-16, 21-29]. The complaint concerns work performed on Lots 102 and 103 during Phase II of the Majestic Hills development. According to the complaint, the Developers retained Alton to perform earthwork-related activity on the lots, including "fill placement, design, and installation of sanitary and sewer plans, and erosion and sediment control." [ECF 55-13, p. 10, ¶ 36]. The complaint also alleges that JND retained PS&R to monitor the development of the lots, including Alton's fill placement. [ECF 55-13, p. 10, ¶ 38]. Plaintiffs allege that PS&R misrepresented that Alton's earthwork-related activities were adequately performed. [ECF 55-13, p. 10, ¶ 41]. Plaintiffs further contend that PS&R knew that NVR would rely on PS&R's earthwork monitoring in building residences on the lots. [ECF 55-13, p. 10, ¶ 39].

According to the complaint, Majestic Hills conveyed Lots 102 and 103 to NVR, representing that the lots were buildable. [ECF 55-13, p. 10, ¶ 42]. In 2011, NVR built and sold the residences to the Bhatts and the Sanders. [ECF 55-13, p. 11, ¶¶ 43-44]. On September 21, 2018, NVR learned of slope movement in the land behind Lots 102 and 103. [ECF 55-13, p. 11, ¶ 47].

On September 24, 2018, an active landslide occurred on the rear slope behind Lots 102 and 103, [ECF 55-13, p. 11, ¶ 48], and multiple tension cracks formed. [ECF 55-13, p. 11, ¶ 49]. NVR allegedly inspected the property, and its construction engineer determined that immediate action was necessary to

prevent more damage. [ECF 55-13, p. 12, ¶ 50]. The engineer also allegedly found that an adjacent drainage swale excavated was inadequately constructed. [ECF 55-13, p. 12, ¶ 51]. Plaintiffs allege that the landslide was caused by a combination of the defendants' failure to install the correct fill behind each home, the failure to use proper drainage, and other unspecified negligence. [ECF 55-13, pp. 13-14, ¶¶ 62-63, 67].

The Sanderses and the Bhatts assert the following seven causes of action against NVR and/or PS&R:

| Count No. | Against | For |
|---|---|---|
| 1 | NVR, PS&R, and other defs. | Breach of contract as third-party beneficiaries of the LPA, any contracts entered into by NVR, PS&R and other defendants with Majestic Hills, and any other contracts entered into by defendants. Plaintiffs do not possess the contracts on which they are suing PS&R, but they represent that those contracts are between PS&R and Majestic Hills. [ECF 55-13, pp. 14-16, ¶¶ 70-81]. |
| 2 | NVR, PS&R, and other defs. | Breached of implied warranty of habitability. [ECF 55-13, pp. 16-17, ¶¶ 82-87]. |
| 3 | NVR, PS&R, and other defs. | Negligence. As for PS&R, they allege that PS&R provided faulty engineering reports and certifications of earthwork activities. [ECF 55-13, pp. 17-19, ¶¶ 88- 98]. |
| 4 | PS&R & another def. | Professional negligence. This count alleges that PS&R failed to exercise the ordinary care of engineers and in providing their professional services. [ECF 55-13, pp. 19-20, ¶¶ 99-104]. |
| 5 | NVR, PS&R, and other defs. | Strict liability for abnormally dangerous activities. [ECF 55-13, pp. 20-21, ¶¶ 105-09]. |
| 6 | NVR, PS&R, and other defs. | Fraudulent and intentional misrepresentations about the quality of the development. [ECF 55-13, pp. 21-22, ¶¶ 110-14]. |

| 7 | NVR | Violation of UTPCPL by making misrepresentations about Lots 102 and 103. [ECF 55-13, pp. 22-23, ¶¶ 115-24]. |

### F. The federal counterclaim.

Finally, NVR is seeking coverage for a counterclaim for indemnification filed in federal court by the Developers against NVR. [ECF 55, p. 24, ¶ 141]. The counterclaim was filed on February 20, 2019, in response to a lawsuit by NVR asserting, among other things, causes of action against the Developers for negligence, breach of contract, and indemnification related to the property damage caused by the 2018 landslides. [ECF 55, p. 18, ¶ 106]. The Developers allege that the LPA between them and NVR required indemnification for liability arising out of NVR's work or the work of its employees and agents. [ECF 55-10, pp. 25-26, ¶¶ 139-140].

They allege that NVR failed to ensure "that its employees, agents, and/or subcontractors complied with, PS&R's and/or any other design professional's recommended method of constructing the foundations of the homes in question." [ECF 55-10, p. 25, ¶ 139]. They further allege that NVR's "employees, agents, and/or subcontractors improperly excavated the lots in question," "engaged in poor workmanship with regard to the construction of the homes at issue," "failed to make appropriate repairs when requested and/or needed by the respective homeowners," and "otherwise altered the grading and excavation work that had been performed by" the Developers' subcontractors. [ECF 55-10, pp. 25-26, ¶ 140]. As a result, the Developers seek indemnification if they are found liable because of such conduct. [ECF 55-10, p. 26, ¶ 141].

### III. The present insurance-coverage dispute.

Mutual Benefit has denied coverage (both defense and indemnity) to NVR for the state complaints and federal counterclaim under the 2018 and

2019 policies at issue, as well as under any earlier policy that might be implicated. *See, e.g.*, [ECF 55, p. 27, ¶ 166]. NVR claims that this is an improper denial and that Mutual Benefit has been engaging in activities that rise to the level of statutory bad faith.

NVR filed an initial complaint in January 2019 [ECF 1] and amended twice in the span of one year—in March and December 2019 [ECF 20 and 55]. NVR's operative complaint alleges the following claims against Mutual Benefit: (1) declaratory judgment for a declaration that the underlying claims are covered under the relevant policies; (2) breach of contract; and (3) statutory bad faith under 42 Pa.C.S. § 8371. [ECF 55, pp. 32-42, ¶¶ 191-254]. NVR also previously alleged additional claims for tortious interference with existing contractual relationship and commercial disparagement, [ECF 55, pp. 42-44, ¶¶ 255-269], but has since withdrawn them. [ECF 59, at pp. 38-39].

Mutual Benefit moved to dismiss the three remaining claims in the second amended complaint.

## **LEGAL STANDARD**

A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Yet "detailed pleading is not generally required." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). "The Rules demand 'only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (citation omitted). The defendant bears the burden of showing that no claim has been presented. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

## DISCUSSION & ANALYSIS

Mutual Benefit advances two main arguments for why NVR's complaint should be dismissed: (1) none of the underlying claims implicate coverage for NVR under the additional insured endorsements; and (2) even if there were coverage, an exclusion for professional services applies. Because the Court agrees with Mutual Benefit's first argument, it need not address the second.[1] Since all causes of action against Mutual Benefit (declaratory judgment, breach of contract, and statutory bad faith) hinge on a coverage determination in favor of NVR, which this Court will not grant, they all fail to state a claim. The complaint will therefore be dismissed with prejudice.

## I. Pennsylvania law on the duty to defend and indemnify.

Under Pennsylvania law, which the parties agree applies, courts "decide whether a duty to defend exists by first reviewing the language of the insurance policy to determine when it provides coverage, and then examining

---

[1] When an insured fails to show that a claim potentially falls within the coverage grant, the Court need not consider the potential application of policy exclusions. *See Devcon Intern. Corp. v. Reliance Ins. Co.*, 609 F.3d 214, 218 (3d Cir. 2010) (insured bears the initial burden of showing that the harm described in the complaint potentially falls within the scope of the policy).

the complaint against the insured to ascertain whether its allegations 'constitute the type of instances that will trigger coverage.'" *Lenick Constr., Inc. v. Selective Way Ins. Co.*, 737 F. App'x 92, 94 (3d Cir. 2018) (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896–97 (Pa. 2006)). Courts "liberally construe and accept as true all factual allegations against the insured," but they "may not stray outside the four corners of the complaint against the insured or consider extrinsic evidence[.]" *Id.* (citations omitted).

An insurer's duty to defend is triggered "if the factual allegations of the complaint on its face comprehend an injury that is actually or potentially within the scope of the policy." *Erie Ins. Exch. v. Muff*, 851 A.2d 919, 926 (Pa. Super. Ct. 2004) (citations and internal quotation marks omitted). When there is doubt as to the existence of a duty to defend, it must be resolved in the insured's favor. *See Markel Int'l Ins. Co. v. W. Pa. Child Care, LLC*, 805 F. Supp. 2d 88, 93 (M.D. Pa. 2011) ("When examining the underlying complaint's allegations, the court must 'resolve all doubts as to coverage in favor of the insured.'") (citation omitted). If the allegations of the complaint are ambiguous or unclear and may reasonably be interpreted to include coverage, there is a duty to defend. *Am. & Foreign Ins. Co. v. Jerry's Sport Center*, Inc., 2 A.3d 526, 541 (Pa. 2010) ("As long as the complaint 'might or might not' fall within the policy's coverage, the insurance company is obliged to defend.") (citation omitted).

However, the complaint should not be given an unreasonable construction and should be read as a whole. *See, e.g.,* 1 Insurance Claims and Disputes § 4:2 (6th ed.); *State of N.Y. v. AMRO Realty Corp.,* 936 F.2d 1420, 1428 (2d Cir. 1991) ("We decline to obligate an insurer to extend coverage based on a reading of the complaint that is linguistically conceivable but tortured and

unreasonable."). Vague verbiage in a complaint does not change the rule that allegations of a covered claim are essential to the duty to defend. *See Norman Shabel, P.C. v. Nat'l Union Fire Ins. Co.*, 923 F. Supp. 681, 683-84 (D.N.J. 1996) (where attorney allegedly failed to give client correct percentage of settlement, court disregarded assorted legal theories pled by client, focused on nature of claim, which was retention of excessive legal fees, and found claim was not covered).

Finally, because the duty to defend is broader than the duty to indemnify, a finding that it is not present will also preclude a duty to indemnify. *Kvaerner*, 908 A.2d at 896 n.7.

## II.    The additional-insured endorsements are unambiguous.

Under Pennsylvania law, where "the language of the contract is clear and unambiguous, a court is required to give effect to that language." *Std. Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983) (citation omitted). A policy may only be deemed ambiguous if "it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Ins. Adjustment Bureau v. Allstate Ins. Co.*, 905 A.2d 462, 468-69 (Pa. 2006). It follows that "there is no ambiguity if one of the two proffered meanings is unreasonable." *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009) (citation omitted). Courts will not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (citation omitted).

Here, the additional-insured provisions are unambiguous. They provide that NVR is an additional insured, but only "with respect to 'bodily injury' or 'property damage' caused, in whole or in part, by 'your work' [defined as work of named insured PS&R] at the location designated and described in the

schedule of this endorsement for that additional insured and included in the 'products-completed operations hazard.'"  [ECF 55-3, at pp. 136, 139].  Below is this language as found in the endorsements:

> The following is added to Paragraph C. Who is An Insured in Section II - Liability:
>
> 3.  Any person(s) or organization(s) shown in the Schedule is also an additional insured, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

Each of the two additional-insured endorsements at issue identifies "NVR INC" as the additional insured.  Each, too, contains a schedule; one describes the "Location And Description Of Completed Operations" as "ALL NVR LOCATIONS" and the other describes the "Location And Description Of Completed Operations" as "ANY AND ALL WORK PERFORMED FOR NVR INC."  Below are the schedules as found in the endorsements:

| Name Of Additional Insured Person(s) Or Organization(s): | Location And Description Of Completed Operations |
|---|---|
| NVR INC<br>C/O COMPLIANCE DEPOT LLC<br>1800 PRESTON PARK BLVD SE 220<br>PLANO TX 75093 | ALL NVR INC LOCATIONS |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

| Name Of Additional Insured Person(s) Or Organization(s): | Location And Description Of Completed Operations |
|---|---|
| NVR INC<br>PLAZA AMERICAN TOWER 1<br>11700 PLAZA AMERICA DR STE 500<br>RESTON VA  20190 | ANY AND ALL WORK PERFORMED FOR NVR INC |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

NVR argues that these endorsements are ambiguous because the "locations" are different in the two endorsements. That is, NVR argues that one endorsement makes clear that the location of the work was "ALL NVR LOCATIONS" but that is inconsistent with the other endorsement, which sets the location as "ANY AND ALL WORK PERFORMED FOR NVR INC." The Court disagrees.

Initially, it is unclear how the location of the work here even matters. Regardless of the location, the language "your work" in the endorsements is unambiguous. "Your work" means work performed by PS&R for NVR. The location provisions are relevant only to *where* the work must be performed, not *for whom* the work must be performed. That is not at issue in this case.

But beyond that, there is no ambiguity over the location of the work. One endorsement makes clear that it covers work at NVR locations. The other would cover work at even non-NVR work sites, but where NVR had contracted with PS&R to provide it services. Sometimes those locations could be the same, but one could certainly envision instances where those locations could be different. The location provisions may be different, but they are clear and compatible. They create no ambiguity.

In short, for NVR to trigger coverage, PS&R's work must be performed "for that additional insured," *i.e.*, NVR. There is no reason for these endorsements to be interpreted as providing additional-insured status to NVR for work performed by PS&R for clients other than NVR. The endorsements simply do not apply to work the PS&R might have done for Majestic Hills, DeNardo, JND or anyone else to develop a property.[2]

---

[2] While the Court need not look beyond the plain meaning of the policies, it is notable that the plain meaning of the policies aligns with NVR and PS&R's contractual language. That is, the "NVR Professional Services Agreement"

## III. None of the complaints are potentially covered claims.

NVR's right to coverage is limited to claims against it alleging bodily injury or property damage that was caused by PS&R's work, and only when that work was performed by PS&R for NVR. Construing all the underlying complaints in NVR's favor, they still allege that the work that PS&R did at the development was performed for Majestic Hills, DeNardo and/or JND, and not NVR. Thus, NVR has no claim to coverage.

### A. The state-court complaints are not potentially covered.

Reading all the state-court complaints in the light most favorable to NVR, they do not implicate a duty to defend. As described above, each complaint specifically alleges that PS&R provided geotechnical engineering and construction monitoring and testing for the Developers and that PS&R was the agent, employee, or subcontractor of the Developers when it performed work at Majestic Hills.

By way of summary, the most common allegations among the complaints are as follows (emphasis added):

- "***PS&R was an agent, employee, and/or subcontractor of JND*** when it provided geotechnical engineering and construction monitoring and field reporting services" during development of the property. [ECF 55-7, p. 10, ¶ 53; ECF 55-8, p. 6, ¶ 32 (same); ECF 55-15, p. 9, ¶ 34 (same); ECF 55-12, p. 10, ¶ 43 (same)].

- "***JND, acting by and through the DeNardos, having common ownership and control with Majestic Hills,***

---

between NVR and PS&R required PS&R to: (1) obtain commercial general liability insurance "for bodily injury, death, property damage or personal injury ***occurring or arising out of the performance of this Agreement***"; and (2) name NVR as an additional insured. [ECF 55-1, at pp. 4-5 § 5]. The insurance obtained by PS&R under the agreement was, therefore, intended to protect NVR from liability for injuries arising from work performed by PS&R for NVR under that agreement.

*engaged PS&R* to provide geotechnical engineering as well as construction monitoring and field reporting services" in connection with development of the property. [ECF 55-8, p. 6, ¶ 31; ECF 55-11, p. 12, ¶ 33 (same); ECF 55-7, p. 10, ¶ 50 (same); ECF 55-12, p. 10, ¶ 40 (same)].

- "In 2005, PS&R reviewed published geotechnical-related maps and literature relative to the geology, past mining activities, and soils present at the Community Property. It summarized its review and observations relative to the geotechnical conditions of the Property in a Preliminary Review *submitted to JND* on April 12, 2005." [ECF 55-7, p. 10, ¶ 54; ECF 55-8, pp. 6-7, ¶ 33 (same); ECF 55-15, p. 9, ¶ 35 (same); ECF 55-12, p. 10, ¶ 44 (same)].

- "*PS&R provided earthwork monitoring to JND* related to Alton's work on the sidehill embankment." [ECF 55-7, p. 11, ¶ 58; ECF 55-12, p. 11, ¶ 48 (same); ECF 55-13, p. 10, ¶ 37 (similar)].

- "*. . . [A]t the request of Majestic Hills, in or around 2006, PS&R conducted a geotechnical study and analysis* of the earthwork operations performed for the residential development to assess the relative compaction and thickness of the fill within the development area; evaluate the suitability for the materials for foundations and floor slab support; and develop geotechnical recommendations pertinent to the construction of the proposed foundations." [ECF 55-8, p. 10, ¶ 54; ECF 55-15, p. 12, ¶ 56 (same)].

- "*. . . JND, the DeNardos, PS&R and Alton performed services for Majestic Hills* pursuant to contracts and/or acted as the agents of Majestic Hills." [ECF 55-13, p. 9, ¶ 31; ECF 55-11, p. 11, ¶ 29 (same); ECF 55-12, p. 9, ¶ 36 (same)].

In sum, the underlying complaints expressly allege that PS&R performed the work at issue for Majestic Hills, DeNardo, or JND. *See, e.g.*, [ECF 55-15, p. 8, ¶ 31; ECF 55-12, p. 10, ¶ 43; ECF 55-13, p. 10, ¶ 38; ECF 55-7, p. 10, ¶ 53; ECF 55-11, p. 12, ¶ 33]. None of the claims against NVR in the lawsuits seek to impose liability based on work performed by PS&R for NVR.

Rather, the actions concern work performed by PS&R as a subcontractor for Majestic Hills, DeNardo, and/or JND, exclusively.

While some lawsuits (specifically, the Swarek and Grimes actions) note that NVR entered into a Professional Services Agreement with PS&R on January 26, 2006 for the "furnishing of all Services requested by NVR from [PS&R] at any time following the date of this Agreement unless other terms and conditions are specifically agreed to in writing," none of the lawsuits allege that PS&R actually performed any work for NVR. In fact, the Hecht complaint does not even name PS&R as a defendant.

In opposing the motion to dismiss, NVR points to general allegations of work performed by various parties, seeking to paint this as work that PS&R may have potentially performed for NVR. *See, e.g.,* [ECF 59, at pp. 26-31]. For example, NVR argues that the Swarek and Grimes complaints "allege that [d]efendants 'breached various contracts[,]' which potentially includes PS&R's contracts with NVR." [ECF 59, at p. 28].

However, these complaints, on their face, only allege that the defendants' "acts and omissions … constituted breaches of the various contracts between these [d]efendants and Majestic Hills." [ECF 55-12, p. 17, ¶ 103; ECF 55-7, p. 20, ¶ 127].

By way of further example, NVR points to an allegation in the second Phillips action that alleges that "the DeNardos, PS&R and Alton performed services for Majestic Hills and/or NVR pursuant to contracts and/or acted as agents of Majestic Hills and/or NVR . . . ." [ECF 59, at pp. 26-27 (quoting ECF 55-15, p. 8, ¶ 31)].

While NVR says this means that PS&R is alleged to have done work for NVR, the second Phillips action complaint specifically states three paragraphs later: "PS&R was an agent, employee and/or subcontractor of JND when it

provided geotechnical engineering and construction monitoring and field reporting services during development of the Property." [ECF 55-15, p. 9, ¶ 34]. As noted above, a complaint should not be given an unreasonable construction and should be read as a whole. *See, e.g.,* 1 Insurance Claims and Disputes § 4:2 (6th ed.). Here, read as a whole, the complaint clearly means to impose liability on PS&R as the Developers' subcontractor; the catch-all statement "Majestic Hills and/or NVR," without any further explanation and read in connection with all of the allegations in the complaint, does not support a claim against NVR for work that PS&R performed for NVR.

Thus, reviewing the underlying complaints, which is all this Court may look at to determine a duty to defend, *Lenick*, 737 F. App'x at 94 (courts "may not stray outside the four corners of the complaint against the insured or consider extrinsic evidence"), PS&R is not alleged to have performed work for NVR for any of the homes at issue.

To be clear, NVR and PS&R entered into service agreements in 2006 and 2018, by which PS&R could perform certain professional services for NVR. But there is nothing in any of the state-court claims at issue to suggest that PS&R was performing work under these agreements for NVR as part of the North Strabane development, or that NVR was paying PS&R for its services under the terms of these agreements.[3] What the underlying complaints allege is that PS&R was performing services for its other clients—the Developers. Because that is not work performed by PS&R for NVR, the underlying claims are not potentially covered.

_____

[3] The one exception appears to be work done by PS&R for NVR at Lot 530 of the development, which is not the subject of any of the underlying lawsuits. *See* C.A. No. 2:18-cv-01335-NR, ECF 1, ¶¶ 67-85, and ECF 183, ¶¶ 152-169; [ECF 57, p. 5].

**B.     The Developers' counterclaim is not potentially covered.**

Reading the Developers' counterclaim in the most policyholder-friendly way, it too does not state a potentially covered claim.  The counterclaim has two theories of liability.

First, it alleges that NVR failed to ensure "that its employees, agents, and/or subcontractors complied with, PS&R's and/or any other design professional's recommended method of constructing the foundations of the homes in question."  [ECF 55-10, p. 25, ¶ 139].

Second, it alleges that NVR's "employees, agents, and/or subcontractors improperly excavated the lots in question," "engaged in poor workmanship with regard to the construction of the homes at issue," "failed to make appropriate repairs when requested and/or needed by the respective homeowners," and "otherwise altered the grading and excavation work that had been performed by" Developers' subcontractors.  [ECF 55-10, pp. 25-26, ¶ 140].

As a result, the Developers seek contractual indemnification under an indemnification provision in the Lot Purchase Agreement.  [ECF 55-10, p. 26, ¶ 141].

The counterclaim is not potentially covered.  With respect to the first theory of liability—that NVR ignored PS&R's recommended method of construction—recall the language of the additional-insured endorsements.  Those endorsements provide coverage for property damage "caused" by "your work" (*i.e.*, PS&R's work for NVR).  But the counterclaim says the opposite.  It states that PS&R got it right and that NVR caused the damage by not listening to PS&R.  That is at odds with the plain language of the additional-insured endorsements that is meant to protect NVR for PS&R's fault.

With respect to the second theory of liability—that NVR is liable for the work of certain NVR's employees, agents, and subcontractors—that also is not covered, because the counterclaim does not allege that one of those subcontractors was PS&R. Indeed, NVR's complaint in that case specifically alleges that PS&R was an "agent, employee, and/or subcontractor of JND," not of NVR. *See*, C.A. No. 2:18-cv-01335-NR, ECF 1, ¶ 25. And the Developers' combined answer and counterclaim, while it denies NVR's averment, makes clear that Majestic Hills, LLC actually retained PS&R. *See, e.g.,* [ECF 55-10, pp. 3, 6-7, ¶¶ 13, 24, 26]. Nowhere in the complaint or in the counterclaim does anyone allege that NVR retained PS&R to perform any work.

Further, the remaining counterclaim allegations could not possibly be interpreted as arising from PS&R's work for NVR. As acknowledged by NVR, "PS&R provides geotechnical engineering and construction monitoring and testing." [ECF 55, p. 3, ¶ 10]. The remaining counterclaim allegations have nothing to do with those types of services performed by PS&R, but have everything to do with work performed by NVR and its agents who were involved in the functional aspects of homebuilding. PS&R simply had no role in alleged "improper[] excavation," "poor workmanship with regard to the construction of the homes," "fail[ure] to make appropriate repairs," and "alter[ing] the grading and excavation work." [ECF 55-10, p. 24, ¶ 140].

Thus, NVR's claim for insurance coverage for the counterclaim must be dismissed.

## IV.    The bad-faith claim must be dismissed.

NVR seemingly concedes in its briefing that if its claims for breach of contract and declaratory judgment fail on a motion to dismiss, so must its claim for statutory bad faith. [ECF 59, at p. 37]. The Third Circuit has recognized as much, holding that where there is "no duty to defend, there could be no

[statutory] bad faith claim against" the insurer. *631 N. Broad Street, LP v. Commonwealth Land Title Ins. Co.*, 778 F. App'x 164, 166 (3d Cir. 2019).

NVR argues, though, that under such circumstances a claim for common law bad faith would still stand.[4] [ECF 59, at p. 37 ("But even if this Court were to find in favor of Mutual Benefit on coverage, NVR's common law bad faith claim would still survive.")].  Yet that is not the case either.  "In order to plead a cause of action for breach of the covenant of good faith, whether it is an express or implied covenant, a plaintiff must properly plead the elements of a claim of breach of contract."  *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 369 (E.D. Pa. 2009) (cleaned up)  "Notably, a claim for breach of a covenant of good faith and fair dealing may not be maintained as an independent cause of action separate from the breach of contract claim."  *Id.* (citation omitted).  A breach of the covenant of good faith and fair dealing merges with a breach-of-contract claim.  *Tubman v. USAA Cas. Ins. Co.,* 943 F. Supp. 2d 525, 529 (E.D. Pa. 2013) (collecting cases).

Because the Court dismisses NVR's breach-of-contract claim based on lack of potential for coverage, so too must it dismiss a subsumed claim of common law bad faith.  *See, e.g., Porter v. Safeco Ins. Co. of Ill.*, No. 3:15-CV-759, 2017 WL 9532731, at *5 n.2 (M.D. Pa. Feb. 6, 2017 ) ("[T]o the extent that Porter advances a common law bad faith claim based upon Safeco's failure to cover losses at 133 ½ Morris Avenue, that common law claim fails because Safeco was justified in denying coverage for losses occurring at this uninsured premises under the plain language of its insurance policy.") *adopted by* 2017 WL 1103169 (M.D. Pa. Mar. 24, 2017); *see also Bukofski v. USAA Cas. Ins. Co.*, No. 3:08CV1779, 2009 WL 1609402, at *5 (M.D. Pa. June 9, 2009) (dismissing

---

[4] Though NVR has not expressly alleged common law bad faith, the Court will construe its complaint as bringing such a claim.

common law bad-faith count because it merged with a breach of contract claim). Thus, all of NVR's claims in this coverage suit fail.

## V.  Dismissal is with prejudice.

NVR has had three attempts to plead facts showing that it has a viable cause of action.  Because NVR has already amended twice and the Court's decision concerns a purely legal interpretation of the policies at issue, the operative complaint will be dismissed with prejudice on the basis that continued amendment would be futile. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434–35 (3d Cir. 1997); *Arndt v. Rexnord Non-Union Pension Plan*, No. 1:12–cv–0311, 2013 WL 5230747, at *3 (W.D. Pa. Sept. 17, 2013).

## CONCLUSION

For all the reasons discussed above, Mutual Benefit's motion to dismiss [ECF 56] will be **GRANTED**.  NVR's Second Amended and Supplemental Complaint [ECF 55] will be **DISMISSED WITH PREJUDICE**.  An appropriate Order follows.

DATED this 13th day of March, 2020.

BY THE COURT:

*/s/ J. Nicholas Ranjan*
United States District Judge